IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

KEVIN DAVID TULL                                                                                          PLAINTIFF

v.                                    NO. 4:14-cv-00759 PSH

CAROLYN W. COLVIN, Acting Commissioner                                         DEFENDANT
of the Social Security Administration

MEMORANDUM OPINION AND ORDER

Plaintiff Kevin David Tull ("Tull") commenced the case at bar by filing a pro se complaint pursuant to 42 U.S.C. 405(g). In the complaint, he challenged the final decision of the Acting Commissioner of the Social Security Administration ("Commissioner"), a decision based upon findings made by an Administrative Law Judge ("ALJ").

Tull begins his challenge to the Commissioner's final decision by attacking the ALJ's impartiality. Tull maintains that he was discriminated against on account of his "race, religion, and sexual practices" when the ALJ posed improper questions to Tull about his religious beliefs, his martial status, and the birth of his children. Tull maintains that the ALJ's questions on those subjects were a violation of Tull's civil rights and led to an unfair decision.

The ALJ is presumed to be unbiased. See Perkins v. Astrue, 648 F.3d 892 (8th Cir. 2011). "A claimant bears the burden of producing sufficient evidence to overcome this presumption" and must show that the ALJ's behavior, "in the context of the whole case, was 'so extreme as to display [a] clear inability to render [a] fair judgment.'" See Id. at 902-903 [quoting Rollins v. Massanari, 261 F.3d 853, 858 (9th Cir. 2001)].

The record reflects that Tull was represented by an attorney at the administrative level, an attorney who had been in conflict with an ALJ.[1] Counsel asked that the ALJ recuse from counsel's cases, but the request appears to have not been addressed. In April of 2012, Tull and counsel appeared at an administrative hearing conducted by the ALJ. See Transcript at 35-66. During the hearing, the ALJ questioned Tull about, inter alia, his marriage and divorce, his co-habitating with another woman, and his responsibilities caring for his children. See Transcript at 41-45. In June of 2012, the ALJ issued a decision that was adverse to Tull. See Transcript at 104-112.

Tull appealed the adverse decision to the Appeals Council. As a part of the appeal, counsel objected to the ALJ presiding over the case. The Appeals Council remanded the case and, as part of the remand order, directed the ALJ to address the request that he recuse from counsel's case. See Transcript at 120-122.

---

[1] The record reflects that the ALJ had filed a complaint against counsel with the Social Security Office of General Counsel ("OGC"). See Transcript at 351-357. In the complaint, the ALJ alleged that counsel had committed misconduct in an earlier, unrelated case. Counsel, in turn, had filed a complaint against the ALJ with the Appeals Council. In that complaint, counsel alleged that the ALJ had been unfair in the earlier, unrelated case. It appears that the complaints were eventually dismissed and did not result in any action being taken against either the ALJ or counsel.

The ALJ sent counsel a letter in May of 2013 in which the ALJ addressed counsel's request that the ALJ recuse from counsel's cases. See Transcript at 10-11, 369. In the letter, the ALJ notified counsel that the ALJ would not recuse from counsel's cases.

In August of 2013, the ALJ conducted a second administrative hearing at which Tull was again represented by the same attorney. See Transcript at 67-96. During the hearing, the ALJ questioned Tull about, inter alia, his re-marriage and his responsibilities caring for his children. See Transcript at 71-72, 75-79.[2] In September of 2013, the ALJ issued a decision that was adverse to Tull. See Transcript at 10-26. Tull appealed, but the Appeals Council denied his request for review. See Transcript at 1-4.

The Court has reviewed the record and finds that Tull has not produced sufficient evidence to overcome the presumption the ALJ was unbiased. This case does not present an instance in which the ALJ made abusive or derogatory comments about the claimant or his attorney, and the ALJ did not indicate by words or conduct that he could not fairly adjudicate Tull's claim. The ALJ's questioning of Tull was typical of a social security claimant and touched on subjects such as marital status and children that have relevance in a social security case. There is no evidence the ALJ inquired into Tull's religious beliefs. In short, the ALJ's behavior, in the context of the whole case, was not so extreme as to display a clear inability to render a fair judgment.

---

[2] For instance, the ALJ asked Tull if he had married the woman he was dating at the time of the first administrative hearing, which he had. See Transcript at 72. The ALJ asked Tull about his responsibilities caring for his children, such as taking them to school, see Transcript at 78-79, and the ALJ even acknowledged that Tull was a good father, see Transcript at 91.

Tull also maintains that the ALJ improperly used a waiver of time to deny Tull's claim. Specifically, Tull alleges the following: "At the beginning of the hearing, the [ALJ] waived time on my delayed or late filing due to mental defect (severe depression). Once time was waived by the [ALJ], use of time to deny my social security benefits by the [ALJ] was an unfair practice because it has already been waived." See Pleading 14 at 1. Tull's assertion of error warrants no relief for at least three reasons. First, it is not clear what is meant by "… the [ALJ] waived time on my delayed or late filing …" Second, the Court has reviewed the transcript from the second administrative hearing and cannot find a waiver. Third, it does not appear that the ALJ used a "use of time" to deny Tull's claim. A fair reading of the ALJ's second decision indicates that he partially denied Tull's claim on the basis of the evidence in the record.

Tull also challenges the conduct of the Appeals Council. He maintains that the Appeals Council failed to act in accordance with requirements of the Social Security Act and its governing regulations. Tull's assertion of error warrants no relief. The provisions he cites govern different aspects of a social security case, including the manner in which a case will be reviewed by the Appeals Council. The Court has reviewed the record and can find nothing to suggest that the Appeals Council acted contrary to those provisions. A fair reading of the Appeals Council's two decisions indicates that it considered Tull's case on the basis of the evidence.[3]

---

[3] Tull also challenges his attorney's conduct. See Pleading 14 at 3. The assertion of error is without merit as there is no evidence the conflict between counsel and the ALJ affected the outcome of this case.

Tull's brief is devoted extensively to challenging the ALJ's impartiality and the Appeals Council's actions. The Court has nevertheless examined Tull's brief for other assertions of error and has found two such assertions. The Court will consider them.[4]

Tull appears to maintain that the ALJ's findings are not supported by substantial evidence on the record as a whole because Tull's depression was not properly considered. He maintains that it is a severe impairment, and the ALJ erred at step two of the sequential evaluation process when he failed to so find.

At step two, the ALJ is required to identify the claimant's impairments and determine whether they are severe. An impairment is severe if it has "more than a minimal effect on the claimant's ability to work." See Henderson v. Sullivan, 930 F.2d 19, 21 (8th Cir. 1992) [internal quotations omitted]. The determination at step two is a medical determination. See Bowen v. Yuckert, 482 U.S. 137 (1987).

The ALJ found at step two that Tull has a severe impairment in the form of degenerative disc disease of the lumbar spine. The ALJ considered Tull's allegation of severe depression but found no evidence to support the impairment.

Substantial evidence on the record as a whole supports the ALJ's finding at step two. Although there is little evidence detailing the severity of Tull's depression, the ALJ could and did find that there is no evidence Tull's depression is a severe impairment.

---

[4] The question for the Court is whether the ALJ's findings are supported by substantial evidence on the record as a whole. "Substantial evidence means less than a preponderance but enough that a reasonable person would find it adequate to support the decision." See Boettcher v. Astrue, 652 F.3d 860, 863 (8th Cir. 2011).

In February of 2001, Dr. Ann Allen M.D., ("Allen") performed a psychiatric evaluation of Tull. See Transcript at 608-623, 624-628. She found that although he was depressed, his condition did not affect his adaptive functioning.

In March of 2011, Dr. Sam Boyd, Ph.D., ("Boyd") performed a mental diagnostic evaluation of Tull. See Transcript at 431-434. Boyd recorded Tull's history of psychiatric treatment as follows:

> Mr. Tull states that he attended two or three sessions of counseling in 1998 or 1999 for the treatment of suicidal ideation. He has never received inpatient psychiatric treatment. He states that he is not taking any psychotropic medication, but that he took an antidepressant a year or two ago. He does not remember the name of the medication.

See Transcript at 432. Boyd tested Tull, reviewed his educational and vocational history, and evaluated his level of adaptive functioning. After doing so, Boyd opined the following with respect to Tull's mental health:

> ... Tull's symptoms are not severe. The memory problems he describes appear to be age related or, perhaps, related to the stress he is feeling about losing the apartment complex he owned. However, his symptoms are not severe enough to meet the criteria for an Axis I diagnosis. I have given him a current GAF in the range of 61-70.

See Transcript at 433.[5]

---

[5] The record reflects that Tull co-owned an apartment complex in California with his mother. See Transcript at 75-78, 88-89. For some reason not clear from the record, they became unable to pay the note on the property. When they stopped paying the note, the lending institution holding the note foreclosed on the property.

In 2011, Dr. Kay Cogbill, M.D., and Dr. Kevin Santulli, Ph.D., separately reviewed Tull's medical records and found no evidence that he suffers from a severe mental impairment. See Transcript at 444, 501. It is true that during the same year, Tull was diagnosed with depression and prescribed medication, see Transcript at 818, but there is no evidence the condition resulted in any work-related limitations.

Given the aforementioned evidence, the ALJ could and did find that Tull's depression does not have more than a minimal effect on his ability to work. The ALJ could and did therefore find that the impairment is not severe.

Tull appears to offer a second reason why the ALJ's findings are not supported by substantial evidence on the record as a whole. Tull maintains that his residual functional capacity was not properly assessed for the period from September 12, 1995, i.e., the alleged onset date, to March 27, 2012, i.e., the date he was found to be disabled.

The ALJ is required to assess the claimant's residual functional capacity, which is simply an assessment of "the most a person can do despite that person's limitations." See Brown v. Barnhart, 390 F.3d 535, 538-39 (8th Cir. 2004). The assessment is made using all of the relevant evidence in the record. See Id.

The ALJ assessed Tull's residual functional capacity and found that he is capable of performing light work. The ALJ found at step five that prior to May 27, 2012, there were jobs a hypothetical individual with Tull's limitations could perform. The ALJ found that after May 27, 2012, there were no jobs the hypothetical individual could perform. Thus, Tull was found to be disabled. The ALJ offered the following reasons for so finding:

In reaching this conclusion [i.e., that after May 27, 2012, there were no jobs a hypothetical individual with Tull's limitations could perform], the undersigned finds that beginning on May 27, 2012, the claimant's allegations regarding his symptoms and limitations are generally credible and consistent with the medical record. On March 12, 2012, he complained of back pain. ... He was diagnosed with lumbago and prescribed medications including Kadian and Methadone. He was also referred for physical therapy and a surgical consult once an MRI had been obtained and reviewed. ... This claim establishes that any functional limitations and or impairments ... Tull has experienced have been at such a level of severity as to render him "disabled" within the meaning and intent of the Social Security Act and derivative Regulations, beginning on May 27, 2012.

The State agency medical consultants' assessments are found not to be persuasive because evidence received at the hearing level shows that ... Tull is more limited than shown at the prior determination, beginning on May 27, 2012.

...

When we make a finding about the clamant's ability to do other work under 404.1520(f)(1), we will use the age categories in paragraphs (c) through (e) of that section. We will use each of the age categories that apply to the claimant during the period for which we must determine disability. We will not apply the age categories mechanically in a borderline situation. If the claimant is within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that the claimant is disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors of the case (20 CFR 404.1563 and 416.963).

... Tull was an individual of closely approaching advanced age on May 27, 2012, the established disability onset date, with no work in the 15 years prior. However, he was only [six] months from advanced age on May 27, 2012, and it is therefore the conclusion of the [ALJ] that after evaluating the overall impact of all the factors of the case, the older age category should be applied.

See Transcript at 23, 24.[6] The ALJ awarded benefits to Tull on his claim for supplemental security income payments but denied his claim for disability insurance benefits because his insured status for such benefits expired on December 31, 2002.

Substantial evidence on the record as a whole supports the ALJ's assessment of Tull's residual functional capacity for the period between September 12, 1995, i.e., the alleged onset date, and March 27, 2012, i.e., the date he was found to be disabled. The ALJ adequately considered the medical evidence, and his evaluation of the non-medical evidence is one of the acceptable evaluations permitted by the record.

The ALJ considered the medical evidence, and it establishes that Tull suffers from degenerative disc disease of the lumbar spine. The only question is what work-related limitations arose from the impairment during the relevant period. It is true that in February of 1999, Dr. Bernard Fogel, M.D., ("Fogel") opined that Tull could do no heavy lifting, could not repeatedly bend or stoop, could not push or pull, could walk and climb for a limited period of time, and could not sit or stand for "appreciable lengths of time." See Transcript at 646. Notwithstanding Fogel's findings, the medical evidence establishes that Tull's work-related limitations were that he could do no heavy lifting and could not repeatedly bend or twist, that is, he could perform light work as the ALJ found.

---

[6] The ALJ is required to consider a claimant's chronological age in combination with his residual functional capacity, education, and work experience. In determining the extent to which age affects the claimant's ability to adjust to other work, the ALJ must consider advancing age to be an increasingly limiting factor in the claimant's ability to make an adjustment to other work. At an advanced age, i.e., fifty years of age or older, age significantly affects the claimant's ability to adjust to other work. Tull was born on November 27, 1957. See Transcript at 40, 71. On May 27, 2012, he was fifty-four years old, or within six months of turning fifty-five.

In April of 1997, Dr. William Talmage, M.D., ("Talmage") prepared a document in connection with Tull's application for disability retirement from his job as a parking control officer. See Transcript at 672-689. Talmage credited Tull's complaints of back pain but opined that he could perform the walking, bending, and sitting requirements of his job, work Talmage characterized as light.

Dr. William Ross, Sr., M.D., ("Ross") performed a series of orthopaedic evaluations of Tull during 1999, 2001, and 2002 for his complaints of back pain. See Transcript at 579-589, 598-604, 629-636.[7] Ross repeatedly found that Tull's medical condition only precluded heavy lifting and repeated bending and stooping.

Ross' findings are consistent with the subsequent findings made by Dr. Janie Talty, D.O., ("Talty"). See Transcript at 574-575, 576-578. Although she initially restricted Tull to, inter alia, lifting no more than fifteen pounds and no repetitive bending or twisting, she modified those restrictions as his condition improved. She eventually came to opine that he could lift up to forty-five pounds and his bending and twisting should be limited to no greater than thirty minutes per each hour of work in an eight hour workday.

Ross' findings are also consistent with the subsequent findings made by Dr. Eugene Galvin, M.D. See Transcript at 549-572. He opined, inter alia, that Tull was precluded from frequent bending and twisting and lifting heavy objects but otherwise had few work-related limitations.

---

[7] Ross represents that he also saw Tull in 1998, see Transcript at 579, but the Court has been unable to locate his report from that examination.

Tull was seen by various medical professional on a number of occasions between December of 1998 and April of 2010 for his complaints of back pain. See Transcript 425-430, 502-503, 512-538, 690-695, 696-712, 713-715, 731-752, 808-815. The progress notes from those examinations are largely consistent with the findings previous made by his attending physicians.

In March of 2011, Dr. Patrick Munson, M.D., ("Munson") saw Tull for his complaints of low back pain. See Transcript at 439-443. Munson diagnosed lumbago and spondylosis without radiculopathy and offered the following conclusions:

> ... the claimant has normal gait and station. He can stand on toes/heels and bend/squat to 75% with lower back discomfort. There is lumbar tenderness to palpation, without radiculopathy, and mildly diminished range of motion of the lumbar spine. He has full range of motion in all other joints, with normal strength in all muscle groups. He has normal grip and dexterity of his hands bilaterally.
>
> Based on today's examination, I believe the claimant should be able to sit for a full workday, and walk and/or stand for 1/4 of a workday, lift/carry objects up to [twenty] pounds, ...

See Transcript at 441. Munson's findings are largely consistent with the progress notes from other physicians who saw Tull in subsequent months. See Transcript at 460-467, 820-838, 840-841, 842-845, 858-862. For instance, he was seen at the University of Arkansas for Medical Sciences in February of 2012 for his complaints of back pain. See Transcript at 858-859. He was ambulatory, and his back was normal upon inspection. His range of motion was normal without pain, tenderness, or loss of strength.

The ALJ also considered the non-medical evidence and did so in accordance with the factors outlined in Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984).[8] He considered Tull's daily activities during the relevant period, see Transcript at 19-20, and could and did find that they were not consistent with disabling pain. For instance, Fogel observed in February of 1998 that Tull could "wash his car, carry some light grocery sacks, and do some mild lawn work." See Transcript at 669. In January of 2003, Talty observed that Tull could perform "physical work ... involving lifting and repositioning a ten foot aluminum extension ladder several times while cleaning out his gutters at his home." See Transcript at 574. Tull's self-reports of his daily activities during the relevant period are not as clear, although it appears that he was able to, inter alia, help care for his children, perform simple household chores, and help coach a youth basketball team. See Transcript at 51, 78, 91, 294-299, 315-319, 431.

The ALJ considered the dosage, effectiveness, and side effects of Tull's pain medication, see Transcript at 20, and could and did find that "his use of medications does not suggest the presence of an impairment ... more limiting than found in [the] decision." See Transcript at 20. The ALJ could and did find that Tull took medication for his pain, medication that included methadone and Kadian. See Transcript at 811, 849. It appears that the medication helped relieve the pain he was experiencing.

---

[8] Polaski v. Heckler requires the ALJ to consider, in addition to the objective medical evidence, the evidence relating to the claimant's daily activities; the duration, frequency, and intensity of his pain; the dosage, effectiveness, and side effects of his medication; precipitating and aggravating factors; and functional restrictions. See Pearsall v. Massanari, 274 F.3d 1211 (8th Cir. 2001).

The ALJ considered the duration, frequency, and intensity of Tull's pain, see Transcript at 19, and could and did find that it was not as severe as he alleged. The ALJ could and did note, inter alia, that Tull was helping coach youth basketball and admitted that he was addicted to prescription pain medication, see Transcript at 307, 431, matters that call into question his allegations regarding the severity of his pain.

The ALJ also considered the inconsistencies in Tull's representations, see Transcript at 20-21, and could and did find that they detract from his credibility. For instance, Tull represented that he has been unable to work since 1995 but admitted helping operate an apartment complex after 1995. See Transcript at 75-76. In January of 2011, he represented that he had no difficulty reaching, see Transcript at 299, but in June of 2011, he represented that he had difficulty reaching, see Transcript at 320.

The ALJ is charged with the responsibility of assessing credibility, and Tull has offered no valid reason for questioning the evaluation of his credibility. The evaluation of the non-medical evidence made by the ALJ will not be disturbed.

Given the foregoing, there is substantial evidence on the record as a whole to support the ALJ's findings. Tull's complaint is therefore dismissed, all requested relief is denied, and judgment will be entered for the Commissioner.

IT IS SO ORDERED this 26th day of August, 2015.

_____
UNITED STATES MAGISTRATE JUDGE